IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| CHARLES VITALE and NINA VITALE, Individually and in their Representative Capacities and on Behalf of a Class of All Persons Similarly Situated,<br><br>        Plaintiffs,<br><br>    vs.<br><br>D.R. HORTON, INC.; D.R. HORTON-SCHULER HOMES, LLC; *et al.*,<br><br>        Defendants. | CV NO. 15-00312 DKW-KSC<br><br>**ORDER REMANDING CASE** |

# ORDER REMANDING CASE

## INTRODUCTION

Defendants removed this action, brought by a putative class of Hawai‘i home-buyers, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). The parties do not dispute that CAFA's minimal diversity requirements have been met. This action, however, consists solely of state-law claims that a Hawai‘i homebuilder and its mainland parent corporation developed and sold homes in Hawai‘i with a defective condition to a putative class predominantly composed of Hawai‘i citizens. Consequently, CAFA's mandatory "local controversy" exception

requires the Court to decline to exercise jurisdiction over this matter. 28 U.S.C. § 1332(d)(4)(A). Accordingly, this case is remanded to state court.

## BACKGROUND

D.R. Horton, Inc. ("Horton Inc.") and D.R. Horton-Schuler Homes, LLC ("Horton LLC") developed, constructed, and sold thousands of single-family homes and condominiums in the State of Hawaiʻi that Plaintiffs allege contain defective, embedded hurricane straps. Complaint ¶¶ 5-6 (attached to Notice of Removal, Dkt. No. 1-2). The named Plaintiffs filed this action on July 13, 2015 in Hawaiʻi state court on behalf of themselves and a class of similarly situated home-purchasers. The class is defined as: "All individuals and entities that own Horton Homes constructed with hurricane straps embedded in the foundations substantially completed on or after July 13, 2005 in the State of Hawaiʻi, and all homeowners associations whose members consist of such individual and entity homeowners." Complaint ¶ 24. Plaintiffs have identified 3,300 putative class members, over 2,900 of whom they claim are citizens of the State of Hawaiʻi. Declaration of Graham B. LippSmith ("LippSmith Decl.") ¶ 4.

Defendants removed this action on August 10, 2015 (Dkt. No. 1). They based removal on the Court's original subject matter jurisdiction under CAFA, asserting that CAFA's minimal diversity requirement had been met because

"Plaintiffs are domiciled in and citizens of Hawaii" and "Defendant Horton Inc. is a Delaware corporation" with a principal place of business in Texas.[1]  Dkt. No. 1, ¶ 4.a.   The case was stayed by stipulation of the parties on August 20, 2015 (Dkt. No. 8), and the stay was officially lifted as of March 30, 2016.  Dkt. No. 10.  On April 10, 2016, Defendants filed a Motion to Dismiss Plaintiffs' Complaint for Lack of Standing.  Dkt. No. 11.  On June 14, 2016, the Court alerted the parties to its concerns regarding the Court's subject matter jurisdiction under CAFA Sections 1332(d)(3) and (d)(4) and ordered briefing on the matter.

## DISCUSSION

### I. The Court's Obligation to Ensure Its Own Jurisdiction

As a preliminary matter, the Court briefly addresses its perpetual obligation to ensure its own subject matter jurisdiction, in light of Defendants' erroneous assertion that the Court may not consider CAFA's jurisdictional exceptions *sua*

---

[1] Defendants, as the removing parties, have the burden of establishing a prima facie showing of federal jurisdiction under CAFA.  *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007).   Plaintiffs do not challenge the threshold minimal diversity requirement under CAFA.  *See* Dkt. No. 30 at 3 n.1.

*sponte*.[2] Defendants' assertion is plainly without merit. *See, e.g., Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1108 (D. Or. 2012) (Rejecting defendant's argument that "the Court may not raise the § 1332(d)(4) exceptions *sua sponte*," while likening CAFA exceptions to abstention cases where "federal courts have consistently held that they may raise abstention concerns *sua sponte*," and that similar "reasoning applies all the more strongly in the context of the § 1332(d)(4) exceptions[.]"); *id.* at 1109 ("Congress has specifically directed the courts to *decline jurisdiction* if a purported class action is overwhelmingly a state controversy. There is no precedent prohibiting the Court from raising the applicability of the § 1332(d)(4) exceptions on its own, relatively early in the case, as courts often do with abstention concerns."); *Reddick v. Glob. Contact Sols., LLC*, 2015 WL 5056186, at *3-*4 (D. Or. Aug. 26, 2015) ("The question of who bears the burden of persuasion under CAFA in connection with a motion to remand is immaterial to this

---

[2]Although Plaintiffs have not filed a motion for remand, Defendants argue that it would be unreasonable to consider such a motion if brought now. The Court disagrees. This matter was stayed by stipulation of the parties shortly after the Notice of Removal was filed on August 10, 2015 – from August 20, 2015 through March 30, 2016 – and there is no statutory time limit for bringing a motion to remand based on an exception to CAFA jurisdiction. *See Garza v. Brinderson Constructors, Inc.*, 2016 WL 1298390, at *6 (N.D. Cal. Apr. 4, 2016) ("There is no statutory time limit for bringing a motion to remand based on an exception to CAFA jurisdiction, but other circuit courts have held that such motions must be brought in a reasonable time, and Ninth Circuit case law suggests the same analysis."). This case is in its early stages, and the Court's consideration of jurisdictional factors is more than reasonable. Notwithstanding the absence of a motion to remand, the Court is both well within its authority and a reasonable timeframe to consider mandatory declination under CAFA.

court's *sua sponte* determination of whether it may properly exercise federal subject-matter jurisdiction."). Even the very cases cited by Defendants offer no support for the assertion. At best, those cases hold that district courts need not raise CAFA jurisdictional concerns *sua sponte*, not that they cannot. *See Barfield v. Sho-Me Power Electric Co-op*, 2015 WL 5022836 at *5 (W.D. Mo. Aug. 21, 2015); *Kuxhausen v. BMS Financial Services, NA LLC*, 707 F.3d 1136, 1140 n.1 (9th Cir. 2013).

Indeed, the Court is generally obligated to ensure its own subject matter jurisdiction at each stage of the proceeding. *See, e.g., Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004) ("[B]y whatever route a case arrives in federal court, it is the obligation of both district court and counsel to be alert to jurisdictional requirements."); *United States v. Southern California Edison Co.*, 300 F. Supp. 2d 964, 972 (E.D. Cal. 2004) (district courts have an "independent obligation to address [subject-matter jurisdiction] *sua sponte*") (internal quotation marks omitted). Moreover, remand is required if the Court lacks subject matter jurisdiction at any time. *See, e.g.,* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (holding that a party does not waive subject-matter

5

jurisdiction "by failing to challenge [it] early in the proceedings"); *Singer v. State Farm Mut. Auto. Ins. Co.,* 116 F.3d 373, 376 (9th Cir. 1997) ("This is not to say that a defect in jurisdiction can be avoided by waiver or stipulation to submit to federal jurisdiction. It cannot."); *Berg v. United Air Lines, Inc.*, 2012 WL 3138022, at *2 (N.D. Cal. Aug. 1, 2012) ("[T]he Court is duty-bound to police its own removal jurisdiction *sua sponte*, despite neither party having raised the issue.") (citing *United Investors Life Ins. Co. v. Waddell & Reed Inc.*, 360 F.3d 960, 967 (9th Cir. 2004)); *cf. Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192-93 (9th Cir. 2003) (holding that a court may not *sua sponte* remand for procedural defects in removal but noting a distinction between procedural and jurisdictional defects and that a "district court must remand if it lacks jurisdiction").

With this continuing obligation in mind, the Court turns to the mandatory exceptions to CAFA jurisdiction.

## II. CAFA Mandates This Court's Declination of Jurisdiction

CAFA vests federal district courts with original jurisdiction of any class action in which minimal diversity of citizenship exists between at least one member of the putative class and at least one defendant, the class consists of at least 100 members, and the matter in controversy exceeds $5,000,000. The parties do not dispute that these three conditions have been met here.

CAFA, however, also includes both mandatory and permissive jurisdictional exceptions. Because the Court finds the mandatory "local controversy" exception applicable here, CAFA's compulsory declination provision requires remand to state court. *See* 28 U.S.C. § 1332(d)(4)(A).[3]

### A. <u>Citizenship of Two-Thirds or More of Members of the Class</u>

The Court first addresses the citizenship requirement of CAFA's mandatory declination provisions, which require proof, by a preponderance of the evidence, that two-thirds or more of the members of the proposed class are citizens of Hawai'i. *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(I) and (d)(4)(B); *see also Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 884 (9th Cir. 2013) ("A district court makes factual findings regarding jurisdiction under a preponderance of the evidence standard.").

In determining the citizenship of a party for jurisdictional purposes, we look to the state of domicile. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Domicile requires the demonstration of two factors: residence and the intention to remain. *See Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986).[4] A

---

[3]The Court does not address whether any other CAFA exception might apply in light of its determination of the applicability of the "local controversy" exception.
[4]Although other circuits have adopted the presumption that evidence of one's residence is prima facie evidence of domicile, the Ninth Circuit has not yet adopted this view. *See Mondragon*, 736 F.3d at 885-86. The Ninth Circuit recognized that the presumption has been widely accepted in other circuits, but declined to reach the issue in *Mondragon*:

person's domicile is his or her permanent home, where he or she resides with the intention to remain or to which he or she intends to return. *Kanter*, 265 F.3d at 857 (citing *Lew*, 797 F.2d at 749); *see also Houston v. Bank of Am., N.A.*, 2014 WL 2958216, at *2 (C.D. Cal. June 25, 2014) ("A person is a citizen of the state in which she has her domicile, i.e., a permanent home where she intends to remain or to which she intends to return."); *Marino v. Nery's USA, Inc.*, 2014 WL 3950662, at *2 (S.D. Cal. Aug. 11, 2014) ("The citizenship of a natural person is determined by his or her state of domicile, not her state of residence. The state of domicile is the person's permanent home, where she resides with the intention to remain or to which she intends to return.") (citations and quotation signals omitted).

According to Plaintiffs, approximately 90 percent of the putative class members here are citizens of Hawaiʻi. Plaintiffs provide evidence of the location of real property owned in Hawaiʻi and the corresponding address of record for payment

---

> In addition, numerous courts treat a person's residence as prima facie evidence of the person's domicile. *See, e.g.*, *Anderson*, 138 U.S. at 706, 11 S.Ct. 449 ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary...."); *Hollinger*, 654 F.3d at 571 ("Evidence of a person's place of residence ... is prima facie proof of his domicile."); 13E Wright & Miller, supra, § 3612 & n.28 ("It is assumed ... that a person's current residence is also his domicile...."). It does not appear that this circuit has yet adopted this presumption. Because the issue is not squarely presented by this appeal, we decline to reach that issue here.

*Mondragon*, 736 F.3d at 886.

of Hawaiʻi taxes by putative class members.  Counsel for Plaintiffs summarizes the class domicile data collected as follows:

> 2.  My co-counsel and I requested that Title Guaranty of Hawaii ("TG"), a title company based in Hawaiʻi, compile a list of all homes built by Defendants D.R. Horton, Inc. and D.R. Horton-Schuler, LLC (collectively "Defendants") that were sold on or after July 13, 2005, the class cut-off date set forth in the Complaint's class definition.
>
> 3.  In or about November 2015,[5] TG compiled the requested data and provided a data set of homes that met the aforementioned criteria, identifying 3,300 homes.
>
> 4.  Among additional information, TG's data set identified the names of the purchaser(s) of each home, the D.R. Horton home address, and the mailing address to which the property tax bill associated with the D.R. Horton home.  My office reviewed TG's data set and determined that the tax bill mailing address for 2,972 of the 3,300 homes was a mailing address within the State of Hawaiʻi.

LippSmith Decl. ¶¶ 2-4.  *See Muscarello v. Ogle County Bd. of Comm'rs*, 610 F.3d 416, 424 (7th Cir. 2010) (finding that plaintiff was domiciled in Arizona, in part,

---

[5] Given the temporal proximity between the date of removal and the dates on which this information was provided to Plaintiffs' counsel, and considering the presumption of continuing domicile, it is reasonable to infer that over two-thirds of the putative class members were citizens of Hawaiʻi at the time the case was removed as required by 28 U.S.C. § 1332(d)(7).  *See Serrano v. Bay Bread LLC,* 2014 WL 4463843, at *2 (N.D. Cal. Sept. 10, 2014) (Noting that "district courts are permitted to make reasonable inferences from facts in evidence[.]   In addition, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile," under which a person's state of domicile, once established, is presumed to continue until rebutted by evidence of change.") (citations omitted).

based on listing of her Arizona address with Medicare and Social Security and on various property tax bills); *Slate v. Shell Oil Co.*, 444 F. Supp. 2d 1210, 1215 (S.D. Ala. 2006) (Considering indicia of domicile, including the state where taxes are paid and where real and personal property are located.); *Jensen v. Rinehart*, 2008 WL 4831443, at *1 (D. Or. Nov. 3, 2008) (Denying motion for remand and finding defendant to be citizen of Oregon where "Defendant concedes that she files Oklahoma tax returns and maintains an Oklahoma mailing address.").

Because over 2,972 of the 3,300 putative class members who purchased homes built by Defendants during the relevant time period also had a State of Hawai'i tax bill mailing address associated with that home within this state, a reasonable inference may be drawn as to their domicile in Hawai'i: both their residence and their intention to remain within the state.[6] This is not a case in which no evidence has been presented, and the Court is limited to "guesswork" regarding

---

[6]As the district court noted in *Bey v. SolarWorld Indus. Am., Inc.*, "[i]n determining whether the requirements of the 'local controversy' exception or the 'home-state controversy' exception have been satisfied, it is permissible for a court to apply common sense and reasonable inferences." 904 F. Supp. 2d 1096, 1102 (D. Or. 2012) (citing *Caruso v. Allstate Ins. Co.*, 469 F. Supp. 2d 364, 367-68 (E.D. La 2007) ("Although there well may be proposed classes where detailed proof of the two-thirds citizenship requirement is required, the Court finds that common sense should prevail in this closed-end class involving people who, as noted, hold an asset that is a measure of domicile, their home."); *Bennett v. Bd. of Comm'rs for E. Jefferson Levee Dist.*, 2007 WL 2571942, at *5 (E.D. La. Aug. 31, 2007) (holding it was "reasonable to infer" that two-thirds of all class members were Louisiana citizens, where class was open to all "residents, domiciliaries, business entities, property owners, and other persons and entities residing or present" in a certain Louisiana parish in August 2005)).

whether the pertinent citizenship thresholds have been met.  *Cf. Mondragon*, 736 F.3d at 884 (Noting that a "jurisdictional finding of fact should be based on more than guesswork.") (citations omitted).   Moreover, even if Plaintiffs are incorrect, and not all of the aforementioned 2,972 putative class members with Horton homes and real property tax mailing addresses in Hawai'i are domiciled here, more than 750 of these individuals would have to turn out to be non-Hawai'i citizens before the putative class fell below the two-thirds threshold.   That plainly would be unreasonable to infer, particularly given no reason to make such an inference here. *See Serrano v. Bay Bread LLC*, 2014 WL 4463843, at *3 (N.D. Cal. Sept. 10, 2014) ("Even if not all of the 99.7% of class members with mailing addresses in California do not actually reside or intend to remain in this state, over 300 employees would have to be non-California citizens before the class fell below the two-thirds threshold.   It would be unreasonable to infer that so many employees would have a mailing address in California but reside or be domiciled in another state.").

Accordingly, the Court finds by a preponderance of the evidence that the threshold two-thirds or more citizenship requirement is met for CAFA's mandatory exception to jurisdiction.

**B.     Section 1332(d)(4)(A): Local Controversy Exception**

CAFA's local controversy exception is intended to keep "class actions with a truly local focus" before the state courts. *Bridewell-Sledge v. Blue Cross of Cal.*, 2015 WL 4939641, at *4 (9th Cir. 2015) (quoting S.Rep. No. 109–14, at 39 (2005)). This exception provides:

> A district court shall decline to exercise jurisdiction under paragraph (2)—
> (A)(i) over a class action in which—
>     (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
>     (II) at least 1 defendant is a defendant—
>         (aa) from whom significant relief is sought by members of the plaintiff class;
>         (bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
>         (cc) who is a citizen of the State in which the action was originally filed; and
>     (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
> (ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[].

28 U.S.C. § 1332(d)(4)(A). As discussed above, Plaintiffs have satisfied the "greater than two-thirds" citizenship requirement. Of the remaining elements, there is no dispute that the principal injuries resulting from the conduct alleged in the

complaint occurred in Hawai'i and no other class action has been filed asserting the same claims during the three preceding years. *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(III) and (d)(4)(A)(ii).

As to the Section 1332(d)(4)(A)(i)(II) factors, the Court notes that at least one defendant from whom significant relief is sought and whose alleged conduct forms a significant basis for the claims is a citizen of the state in which the claim was originally brought. Horton LLC admits that it does business in the State of Hawai'i with its principal place of business in Honolulu, Hawai'i, and Plaintiffs assert that Horton LLC developed, built, and sold their allegedly defective homes. *See* Answer ¶ 8; *cf.* Notice of Removal ¶ 4.a. (Horton Inc. is a Delaware corporation with a principal place of business in Texas); *see also Benko v. Quality Loan Serv. Corp.*, 789 F.3d 1111, 1118 (9th Cir. 2015) ("CAFA clarifies that we should look at a defendant's 'basis' in the context of the overall 'claims asserted.'") (citing 28 U.S.C. § 1332(d)(4)(A)(i)(II)(bb)). Finally, the putative class seeks significant relief in the form of compensatory, treble, and punitive damages from Horton LLC, which developed and constructed thousands of residential homes purchased by homeowners in Hawai'i. *Benko,* 789 F.3d at 1119 ("To determine if the Plaintiffs claim 'significant relief' from [defendant], we look to the remedies requested by the

13

Plaintiffs in the [complaint]."). Accordingly, the requirements of the "local controversy" exception have been met, mandating remand.

### C. Summary

Based upon the totality of the record, the Court concludes that CAFA's "local controversy" exception applies here. The Court's conclusion is buttressed by the purpose of the statute – CAFA's mandatory declination provisions are "designed to draw a delicate balance between making a federal forum available to genuinely national litigation and allowing the state courts to retain cases when the controversy is strongly linked to that state." *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 570 (5th Cir. 2011) (citation omitted). It is difficult to imagine a putative class action that is more "strongly linked" to a specific and individual state than this one. Because Section 1332(d)(4)(A) controls, the Court "shall decline to exercise jurisdiction" and, accordingly, remands the case to state court.

## **CONCLUSION**

Based on the foregoing, the Court remands the case to the Circuit Court of the First Circuit, State of Hawaii.   The Clerk of Court is directed to send a certified copy of this order to the Circuit Court of the First Circuit, State of Hawaii.

IT IS SO ORDERED.

DATED: August 9, 2016 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

Vitale, et al. v. D.R. Horton, Inc., et al.; CV NO. 15-00312 DKW-KSC; **ORDER REMANDING CASE**